# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

  -v-                                         Case No. 07-C-694
                                                         (02-CR-75)

**ZACHARY BARIAN,**

        **Movant.**

## DECISION AND ORDER

On November 1, 2004, a jury found Petitioner Zachary Barian ("Barian") guilty of conspiracy to distribute cocaine and cocaine base. The Court sentenced him to 360 months' imprisonment. Barian appealed to the Court of Appeals for the Seventh Circuit, seeking relief under the Speedy Trial Act, and the judgment was affirmed on February 7, 2007, in an unpublished decision. On July 30, 2007, Barian filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence by a person in federal custody, which the Court will now consider.

## BACKGROUND

In April 2002, Barian was charged, along with others, with conspiracy to distribute and possess with intent to distribute cocaine, marijuana, and ecstasy. Superseding indictments were filed in August and September of 2002. Barian was

convicted at trial of a large-scale conspiracy to distribute cocaine and cocaine base which operated in Milwaukee from the early 1990s to 2002. Barian was also convicted of intent to distribute a kilogram of cocaine on or about April 5, 2002. Trial evidence established that after a load of cocaine arrived in Milwaukee, on April 5, 2002, Barian arranged to have four kilograms brought to Kevin McKenzie's ("McKenzie") residence where Barian and McKenzie re-rocked the cocaine into over five kilograms. Barian then left with one of the kilograms.

During a series of calls between April 4-5, 2002, Barian arranged to have Jason Strekow ("Strekow") and Terrell James ("James") meet him at the apartment to pick up two kilograms each. Barian also instructed Strekow to bring back poor-quality cocaine and to buy Inositol, which would be used for re-rocking the cocaine. On the evening of April 5, 2002, Strekow arrived and entered McKenzie's apartment. When McKenzie came to the exterior door to let James in, police officers approached. Before McKenzie and James were arrested, James dropped a gun. This gun had been provided to Barian by Joshua Trawitzki. After hearing rustling noises in the apartment, officers entered and saw Strekow jump out the window.

Officers searched McKenzie's apartment and recovered four kilograms of cocaine, four kilogram wrappers, a suitcase containing a kilogram press, a bag containing twenty ounces of cocaine, a bag containing additional cocaine, a blender covered with cocaine residue, paper masks, latex gloves, a digital scale, cans of Acetone and Inositol,

2

rolls of packaging, electrical, and duct tape, quart-sized bags containing cocaine residue, a box of dryer sheets, a bullet-proof vest and a 9mm handgun. Agents also observed Barian leave McKenzie's apartment carrying two white plastic bags. Barian walked to a gold GMC Yukon, placed one bag in the Yukon, and entered the apartment building where Patrick Keating ("Keating") resided. Barian was arrested in the hallway leading to Keating's apartment. A search of the Yukon revealed that the white bag Barian placed in the vehicle contained one kilogram of cocaine. In Keating's apartment, police officers also found a .357 revolver, a 9mm handgun, ammunition, shrink-wrapped bundles of cash totaling $124,000, approximately $1,000 scattered across the floor, a digital scale and wrapping materials for currency.

Agents did not have a search warrant for Keating's apartment, but through the process of pretrial motions, the Court found that the search was justified by probable cause and exigent circumstances. Barian's counsel did not move to suppress the evidence found in Keating's apartment or the Yukon and Barian's appellate counsel did not appeal the issue.

## APPLICABLE LAW

The relief sought pursuant to Section 2255 "is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Relief under § 2255 is limited to "an error of law that is

3

jurisdictional, constitutional, or constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (citing *Carreon v. United States*, 578 F.2d 176, 179 (7th Cir. 1978) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). Moreover, "a § 2255 motion is not a substitute for direct appeal." *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000). Claims not raised on direct appeal cannot be raised in a § 2255 motion unless "a failure to consider the issue would amount to a fundamental miscarriage of justice." *Id.* Accordingly, certain claims are typically allowed in the context of a § 2255 motion, even if they were not raised on direct appeal, including claims for ineffective assistance of counsel. *Id.* at 433-34.

## DISCUSSION

Barian's § 2255 motion raises seven grounds for relief. He contends that (1) trial counsel failed to file a motion to suppress evidence obtained pursuant to a search Barian claims was unconstitutional; (2) appellate counsel failed to appeal the Court's admission into evidence statements of co-conspirators; (3) trial counsel failed to obtain from the government a copy of the wire-tap warrant; (4) trial counsel failed to object to the Court's jury instructions; (5) appellate counsel failed to challenge his sentence as exceeding the maximum sentence allowed; (6) trial counsel failed to file a motion to dismiss based on the Speedy Trial Act; and (7) trial counsel failed to challenge the Court's jurisdiction.

4

Barian's challenge to his conviction depends on whether he received ineffective assistance of counsel. The Sixth Amendment guarantees criminal defendants the effective assistance of counsel.[1] That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An ineffective assistance of counsel claim is governed by a two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Pursuant to *Strickland*, a petitioner "must show that counsel's performance was deficient . . . [and] . . . the deficient performance prejudiced the defense." 466 U.S. at 687. The first element requires a petitioner to show that his trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In considering the first element, the Supreme Court has instructed courts not to engage in "the distorting effects of hindsight," and to "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. In addition, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

---

[1] The Sixth Amendment of the United States Constitution provides as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

5

Under the second component, a petitioner "must show that there is reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

If the Court determines that the petitioner has failed to satisfy either component of the *Strickland* test, it need not address the other. *See Chichakly v. United States*, 926 F.2d 624, 630-31 (7th Cir. 1991). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. Establishing an ineffective assistance of counsel claim is a difficult task for § 2255 movants, and thus, few such motions will be successful. *See Griffin v. Camp*, 40 F.3d 170, 173 (7th Cir. 1994).

Barian first contends that his trial counsel should have moved to suppress the evidence obtained from the warrantless search and seizure of the GMC Yukon. Barian does not contest the warrantless search of McKenzie's or Keating's residence or the drug evidence seized and used against him. (Reply to Government's Response at 4.)

Traditionally, courts "have analyzed a search or seizure in light of traditional standards of reasonableness 'by assessing, on the one hand, the degree to

6

which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Virginia v. Moore*, 128 S. Ct. 1598, 1604 (2008) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)). However, when probable cause is present and an officer believes even a minor crime was committed in his presence, the balancing of private and public interests is not in doubt, and the arrest is constitutionally reasonable. *Id.* (quoting *Wyoming*, 526 U.S. at 354); *United States v. Rivera*, 248 F.3d 677, 680-81 (7th Cir. 2001) (citing *United States v. Marshall*, 157 F.3d 477, 481-82 (7th Cir. 1998)). Moreover, "a warrantless search of an automobile, based upon probable cause to believe that the vehicle contained evidence of crime in the light of an exigency arising out of the likely disappearance of the vehicle," does not contravene the Warrant Clause of the Fourth Amendment. *California v. Acevedo*, 500 U.S. 565, 569 (1991) (citing *Carroll v. United States*, 267 U.S. 132, 158-59 (1925) (establishing an exception to the warrant requirement for moving vehicles)); *see also United States v. Fiasche*, 520 F.3d 694, 698 (7th Cir. 2008) (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978) ("warrantless entry by criminal law enforcement officials may be legal where there is compelling need for official action and no time to secure a warrant")).

In defining probable cause, the United States Supreme Court determined that it "must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers." *United*

7

*States v. Ross*, 456 U.S. 798, 808 (1982); *see also Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (quoting *Brinegar v. United States*, 338 U.S. 160, 174-75 (1949) (noting that in assessing probable cause the Court looks at factual and practical considerations on which reasonable and prudent people, not legal technicians, act). The Supreme Court has further held that a reliable informant may constitute probable cause for arrest where the information given is sufficiently accurate and leads officers directly to the suspect. *Wong Sun v. United States*, 371 U.S. 471, 480 (1963) (citing *Draper v. United States*, 358 U.S. 307 (1959)).

In this case, the police officers actions were based upon probable cause and were justified. Government officials knew through the use of wire taps and other sources that a large load of cocaine had arrived in Milwaukee. Police officers observed Barian and others in the process of distributing the cocaine. Police officers observed criminal activity and therefore, the officers' actions in arresting Barian and searching the vehicle he had been driving were constitutional. If Barian's trial counsel had attempted to file a motion to suppress it would have been denied. In fact, trial counsel for Keating, filed a motion to suppress and after an evidentiary hearing, this Court denied the motion.[2] Therefore, Barian is unable to demonstrate the requisite prejudice or that his counsel's performance was deficient.

---

[2] Barian incorrectly argues that this Court granted Keating's motion to suppress. On November 25, 2003, this Court denied Keating's motion to suppress and did not suppress the drug evidence seized from Keating's apartment. *See* Movant's Opening Brief in Support of 28 U.S.C. § 2255 Motion ("Movant's Br.") at 6 and Docket #698 in 02-CR-75.

8

Barian's next claim is that his appellate counsel failed to appeal the statements of co-conspirators. Barian's argument is that John LaPlante, a co-defendant and cooperating government witness, testified at trial that LaPlante and Barian had conspired in early 2000 to distribute 6 kilograms of cocaine and that at that point in time, the crime (conspiracy to distribute 5 kilograms of cocaine) was completed. Barian contends that the admission of recorded telephone calls or other co-conspirator statements occurring after "early 2000" was error because such statements could not have been made in furtherance of the completed conspiracy. (Movant's Br. at 8-9). Therefore, Barian concludes that his appellate counsel was ineffective for failing to raise this argument on direct appeal.

Under Fed. R. Evid. 801(d)(2)(E), "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy," is not hearsay. Conspiracy is a continuing offense, and as alleged in the superseding indictment, this drug conspiracy operated from 1991 to August 2002. Barian's argument, that once the five kilograms had been "conspired about" or distributed the conspiracy ends, misunderstands the law of conspiracy. "[T]he essence of a conspiracy is an 'agreement to commit an unlawful act.'" *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (quoting *Iannelli v. United States*, 420 U.S. 770, 777 (1975)). Once the agreement is made, "each is responsible for the acts of each other." *Salinas v. United States*, 522 U.S. 52, 63-64 (1997) (citing *Pinkerton v. United States*, 328 U.S. 640, 646 (1946) ("And so long as the partnership in

9

crime continues, the partners act for each other in carrying it forward")). In order to establish the agreement, the government used the testimony of co-conspirators. The testimony was not hearsay, pursuant to Fed. R. Evid. 801(d)(2)(E), and appellate counsel reasonably did not raise an objection on direct appeal to its admission at trial.

Barian claims that the government failed to disclose in discovery copies of the Court orders authorizing wire tap recordings, which were later used at trial. Barian contends his trial counsel was ineffective for failing to challenge this alleged lack of disclosure by the government. In its Response, the government provided two affidavits from Barian's trial counsel and the prosecutor in the case, Exhibits 1 and 2 respectively. The affidavits establish that copies of Title III authorization documents were disclosed early in the prosecution. Barian's contention is factually inaccurate and consequently, frivolous.

Barian argues that trial counsel was ineffective for failing to object to the Court's jury instruction regarding the weight of the cocaine involved in the conspiracy. In its instructions, the Court explained to the jury:

> To determine whether or not the conspiracy involved a particular weight of cocaine, you may consider the amount of cocaine involved in the agreement, and all amounts involved in all acts of the co-conspirators committed in furtherance of the conspiracy.

10

Trial Transcript at 907. This instruction was coupled with a special verdict form requiring the jury to decide the weight of the controlled substances involved in the offenses.

In drug-conspiracy cases, defendant-specific findings of drug type and quantity are not required. *United States v. Knight*, 342 F.3d 697, 710 (7th Cir. 2003). The Court of Appeals for the Seventh Circuit stated:

> Once the jury determines the existence of the conspiracy, the defendants' participation in it, and assigns a type and quantity attributable to the conspiracy as a whole, it has established the statutory maximum sentence that any one participant in that conspiracy may receive. . . . Once that maximum sentence has been established (ceiling), the judge may determine the drug quantity attributable to each defendant (floor) and sentence him accordingly.

*Id.* at 711. In this case, the jury instruction was correct and accurate. Any objection by trial counsel would have been rejected by the Court. Barian is unable to demonstrate that his trial counsel's performance was deficient and Barian was not prejudiced by the lack of an objection. Moreover, the weight proven at trial was far in excess of 5 kilograms of cocaine.

Barian contends that his appellate counsel failed to challenge the duration of his sentence. For conspiracy to distribute five or more kilograms of cocaine, the mandatory minimum sentence is 10 years imprisonment, while the maximum sentence is life imprisonment. 21 U.S.C. § 841(b). In *United States v. Booker*, the United States Supreme Court held that the sentencing guidelines are not mandatory, but rather advisory.

11

543 U.S. 220, 245 (2005). The sentencing judge should first compute the guidelines sentence as he would have before *Booker*, and then determine whether the guideline sentence is correct to give to the particular defendant. *United States v. Dean*, 414 F.3d 725, 727 (7th Cir. 2005); *see also United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006) ("District judges must resolve disputed factual issues, . . . determine relevant conduct by a preponderance of the evidence, and apply the appropriate sentence enhancements in order to compute the advisory guidelines sentence range.").

At sentencing, the Court found the Guidelines drug weight to be 50-150 kilograms of cocaine (base offense level of 36); found that Barian had a leadership role in the offense (four level increase under U.S.S.G. § 3B1.1); and found that the defendant possessed firearms during the course of the conspiracy (two level increase under U.S.S.G. § 2D1.1(b)(1)), for a total offense level of 42. Barian's criminal history score was V, and consequently, his guideline range was 360 months to life imprisonment. The Court imposed a 360-month imprisonment, which was below the statutory maximum. The Court could have imposed a sentence of life imprisonment but instead decided to sentence Barian to 360 months. Therefore, appellate counsel was not deficient for failing to object to the length of Barian's sentence.

Barian argues that the jury should have determined the drug weight, firearms possession and leadership role under the Guidelines. As noted in *Robinson*, the Guideline findings for relevant conduct drug weight, firearm possession and leadership

12

are properly decided by the sentencing judge, applying the preponderance standard. *Robinson*, 435 F.3d at 701. Barian's 30-year sentence was appropriate and any objection to the sentence would have been rejected. Barian has failed to demonstrate deficient performance or prejudice.

Barian argues that his trial counsel was ineffective for failing to move to dismiss the indictment because his trial did not commence within the required 70-day period under the Speedy Trial Act.[3] In affirming Barian's conviction in an unpublished decision, the Court of Appeals for the Seventh Circuit noted, "[i]n a case this size, it is understandable that lots of delays occurred." In this case, defense counsel consented to the government's requests for adjournment. If trial counsel had not consented to the continuances, this Court would have granted the adjournments and excluded time under the catch-all provision of the Speedy Trial Act, given the nature, volume and complexity of the case. Moreover, Barian is unable to demonstrate that the delays altered the outcome of the trial and he was prejudiced. Whether Barian's argument comes under the Speedy Trial Act or the Sixth Amendment, Barian is unable to demonstrate deficient performance or prejudice.

---

[3]The Speedy Trial Act provides "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1).

13

Barian's final claim is that trial counsel was ineffective for failing to challenge the Court's jurisdiction. Barian contends that federal jurisdiction exists only in Washington D.C. and federal enclaves within the States. "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. It has been repeatedly held that "district judges *always* have subject-matter jurisdiction based on *any* indictment purporting to charge a violation of federal criminal law." *United States v. Bjorkman*, 270 F.3d 482, 490 (7th Cir. 2001); *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999). "Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts. That's the beginning and the end of the 'jurisdictional' inquiry." *Hugi*, 164 F.3d at 180.

Despite this clear precedent, Barian contends that his counsel was ineffective for failing to file a motion challenging the Court's jurisdiction. If Barian's trial counsel had filed such a motion it would have been denied as frivolous. Barian was not prejudiced by trial counsel's sound professional judgment to forego such a meritless motion. In conclusion, a defendant's lawyer has "no duty to make a frivolous argument." *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003).

14

**ORDER**

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS ORDERED** that Barian's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket #1) is **DENIED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS ALSO ORDERED** that the Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 2nd day of February, 2009.

> **SO ORDERED,**
>
> *s/ Rudolph T. Randa*
>
> **HON. RUDOLPH T. RANDA**
> Chief Judge

15

Case 2:07-cv-00694-LA   Filed 02/02/09   Page 15 of 15   Document 8